FRANCISO COLL MOYA, Petitioner and Appellee, *v.* WARDEN OF THE MUNICIPAL JAIL OF SAN JUAN, Respondent and Appellant.

No. AP-62-68.      Decided October 10, 1963.

222

*J. B. Fernández Badillo, Solicitor General,* and *Jenaro Marchand, Assistant Solicitor General,* for appellant. *Enrique .González, Miguel A. Ortiz Lugo, Santos P. Amadeo,* and *G. Marrero Ledesma* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

Mr. Justice Dávila delivered the opinion of the Court.

José Pérez Rodríguez, judge of the District Court, Río Piedras Part, imposed nine fines for contempt on Cayetano Coll Pujols, an attorney at law. The same judgment ruled each of the nine cases. We copy it below:

### "JUDGMENT

"Judgment of conviction having been rendered in *People* v. *José Manuel Rivera Rodríguez,* criminal cases Nos. T62-16681, T62-16682 and T62-16683, for violation of the Vehicle and Traffic Law, Coll, defendant's attorney, walked over to the railing and in a low tone asked the court how it wanted the petition for appeal prepared. The court answered that the notice of appeal be prepared in accordance with the law, which would be sufficient. To this the attorney answered with disrespectful motions and gestures and saying something which could not be understood. The court called the attorney's attention to his conduct and ended the incident. The attorney continued acting disrespectfully, and when the undersigned judge ordered the marshal to take the attorney out of the room, he said: 'You do that because you are up there.' The attorney had already been warned that if he continued acting in such unlawful way he would be punished for contempt. For that reason, and upon hearing what we have quoted, we sentenced the attorney to pay a $25 fine. The attorney continued acting disrespectfully, aloud, in a hostile attitude toward the court. He would not keep quiet despite the order to keep quiet. He did not withdraw despite the marshal's and Judge Flores' efforts. He insisted on his conduct despite the fact that the court kept counting the fines for contempt imposed. On several occasions the attorney in question said to the court: 'Keep on punishing for contempt.' On another occasion, in the incident to which we are referring, the attorney called the undersigned a bully. On another he said that they would have to kill him. The disobedience of the orders, disrespectful conduct, phrases mentioned above, totalled nine different transactions which gave rise to the nine sentences of $25 fines imposed on defendant. All of the foregoing occurred while the court was in session in room C, at 11:30 a.m. more or less, of June 29, 1962, in Río Piedras. In the courtroom were,

among other persons, colleagues Judges Mayo and Flores Rodríguez, Mr. Rivera Bernard, the clerk and the marshal.

"The situation above described constituted disrespectful, disorderly, disdainful and insolent conduct toward the court, disobeying the latter's orders and uttering the offensive and injurious language already mentioned against the judge. The court considered such conduct as constituting contempt and sentenced the attorney to pay $25 with costs in each case (9), or to serve the corresponding jail sentences.

"In view of the foregoing, the marshal of this court is hereby ordered to comply with the terms of this sentence committing the defendant to the proper jail in the event the sentences hereby imposed are not satisfied. The warden of the municipal jail of San Juan is also ordered to receive and commit Cayetano Coll Pujols until the sentences hereby imposed are satisfied, or the corresponding imprisonment is served, 25 days in 9 cases.

"Let it be entered and notified.

"Río Piedras, P.R., June 29, 1962.

(s)  JOSÉ PÉREZ RODRÍGUEZ

Judge."

On June 29, 1962, Francisco Coll Moya filed in the San Juan Part of the Superior Court a petition for habeas corpus in favor of Coll Pujols. It was alleged "that Cayetano Coll Pujols, first cousin of petitioner, is illegally detained and in the custody of the warden of the municipal jail of San Juan."

The writ was issued the same day the petition was filed. The hearing of the habeas corpus was held on July 24, and that same day the district attorney filed an answer denying "that Cayetano Coll Pujols is illegally detained, alleging on the contrary that the detention is valid because it complies with the judgments rightly entered by the District Court, Río Piedras Part." At the opening of the hearing the district attorney raised the question that the petitioner had not filed his return to the petition filed by the warden.

His contention is based on the statements in *Hoyos* v. *Superior Court*, 80 P.R.R. 612 (1958). There we said at p. 618:

"It is true that under that section, as under its counterpart in the California statute, the function of a petition in a habeas corpus proceeding is to insure or obtain the issuance of the writ by the judge or court, and that once the writ has been issued the petition has accomplished all its purposes. The writ requires a written return from the person against whom it is issued. This return is the allegation which corresponds to the complaint in civil actions. *Vázquez* v. *Díaz*, 63 P.R.R. 838, 841. The party brought before the court or judge, on the return of the writ, may file a traverse denying or controverting any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. This traverse is the allegation which joins the issue in the case. If the return is not attacked in the stated manner by the corresponding traverse, it is considered accepted, and if it is sufficient at law, the writ must be denied and the prisoner recommitted. The petition may be treated as a traverse to the writ when it alleges the essential facts in support of petitioner's case, by stipulation of the parties and the approval of the court. If no stipulation is made, the petition need not be considered in settling the controversy involved in the proceeding."

The court dismissed the question in view of the fact that defendant had filed his return the same day of the hearing.

Petitioner stated the grounds of his petition at the opening of the hearing. One of his attorneys stated that "we have in the first place, Your Honor, that the judgment or judgments rendered in these cases are null and void because the legal procedure was not followed; in the first place, because a separate judgment for each case was not pronounced, in which judgment it was necessary to specify the facts which gave rise to each judgment. . . . We understand, Your Honor, that in order to comply with the law and with the case law Judge Pérez Rodríguez was under the duty to

pronounce a separate judgment in each case, setting forth, Your Honor, in the judgment so decreed (*sic*) a complete recital of the facts which gave rise to the punishment in that particular case for the offense of contempt. . . . Because even assuming that all of these judgments constitute a single one, since those requirements were not met, Your Honor, there is no separate warrant, in a separate document, as required for committing colleague Coll Pujols to jail. Because a sentence was imposed without authority therefor by Judge Pérez Rodríguez, since the law prescribes a maximum penalty and the judge exceeded himself in the imposition of the penalty, as it clearly appears from the judgment in this case."

The habeas corpus was granted. In the judgment the Superior Court says:

"As may be seen from the judgment in the cases for contempt, which is filed in the record, as well as from the oral evidence offered at the hearing, the incident which gave rise to the imposition of the sentences was of short duration and developed from beginning to end as a single transaction. The respondent court exceeded its jurisdiction in imposing nine sentences on the alleged contemner as if separate acts were involved.

"In the cases in question the trial judge rendered only one judgment to cover and comprise the nine contempt cases, he being bound to pronounce separate sentences and warrants for each case, and in each order or warrant he was bound to set forth, as required by law, the act or acts constituting such contempt, as well as other particulars required by the statute. This aspect of the procedure is of vital importance in the application of the rule of due process of law, not only as respects the defendant's determination as to his right to appeal from one or several sentences and to serve the rest, but also as respects the responsibility of the officers bound to see that such sentences are carried out and executed.

" 'Where a defendant is found guilty of separate acts constituting contempt, judgment must be pronounced separately for the separate contempts. Lindsley v. Superior Court of Cali-

fornia, in and for Humboldt County, 245 P. 212, 218; 76 Cal. App. 419, citing a Corpus Juris; 17 C.J.S., p. 124, footnote 32.'

"We conclude that respondent court exceeded its authority and jurisdiction and deprived defendant of the due process of law, and, consequently, that it violated the constitutional rights of the attorney, appellant herein.

"For the reasons stated in this judgment, as well as on the pleadings of the parties and the evidence offered during the hearing of the petition, it is hereby decreed that the sentences imposed by the District Court of Puerto Rico, Río Piedras Part, in criminal cases 62-5517, 62-5518, 62-5519, 62-5520, 62-5521, 62-5522, 62-5523, 62-5524 and 62-5525, *The People of Puerto Rico* v. *Cayetano Coll Pujols,* for contempt in open court, are void and without any legal effect whatsoever, wherefore such sentences are reversed and defendant acquitted, ordering that he be set free immediately and that the bail furnished by him be cancelled."

The People appealed. It assigns two errors: (1) The trial court erred in taking cognizance of the petition without petitioner having filed a traverse to the return; (2) The trial court erred in reversing the judgment entered with jurisdiction by the District Court of Río Piedras and in acquitting Cayetano Coll Pujols without legal authority therefor.

In our judgment, the first error assigned was not committed. Although it is true that in *Hoyos* we pointed out the need for the petitioner to file an answer to the return filed by the person who holds him in custody, we said that "the petition may be treated as a traverse to the writ when it alleges the essential facts in support of petitioner's case, by stipulation of the parties and the approval of the court." Although in the petition in this case petitioner's contention was not stated, his attorney did so, as stated hereinabove, at the opening of the hearing. The issue was clearly joined. And since respondent filed his return the same day of the hearing, it was reasonable to permit petitioner to state his theory verbally.

The second error assigned is based on the fact that the Superior Court was without authority at law to decree petitioner's liberty. The gist of this assignment is based on the well-settled rule of this Court to the effect that "[this Court], notwithstanding the laxity with which it has granted such writs, has refused to issue them to correct questions of fact or of law except of a jurisdictional character or in cases of violations of constitutional or statutory rights entailing the nullity of the judgment." *Valentín* v. *Warden*, 80 P.R.R. 450, 460 (1958); *Ex parte Pesquera*, 17 P.R.R. 706 (1911); *Ex parte Le Hardy*, 17 P.R.R. 985 (1911). But further on in *Valentín* we said:

"When there has been a previous conviction, a habeas corpus proceeding constitutes a collateral attack on the judgment. It is true that the regularity of the proceedings which culminated in the judgment is presumed; but the original jurisdiction of a trial court may be lost or exceeded in the course of those proceedings and the same may become void if the defendant's constitutional guarantees are violated. The modern judicial tendency favors the broadening of the scope of inquiry in the habeas corpus in order to preserve the constitutional safeguards of human liberty."

In the light of this principle, we shall therefore consider whether the district judge exceeded his authority in imposing nine sentences for contempt on attorney Coll Pujols.

■ In our jurisdiction it is expressly required—Act of March 1, 1902, 33 L.P.R.A. § 519[1]—that "whenever a person is fined or committed to jail . . . an order or warrant for such fine or imprisonment must be signed by the judge . . . *setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances, and specifying the sentence of the court;*

---

[1] Rule 242 of the Rules of Criminal Procedure, in force at present, provides in part: "The order convicting of contempt shall set forth the facts and be signed by the judge, and record thereof shall be kept in the minutes of the court."

*otherwise such sentence will be wholly invalid and inoperative."* (Italics ours.)

If the facts constituting contempt are not set forth, the judgment is void. In *Ex parte Bird*, 3 P.R.R. 501 (1903), we ordered the discharge of petitioner therein on the ground that the act constituting the contempt was not set forth in the warrant of arrest.

In the annotation *Contempt-Findings*, 154 A.L.R. 1227 (1945), the rule is stated as follows:

"It has been held, in the overwhelming majority of jurisdictions, that an order or judgment of direct contempt must contain a statement of the facts upon which the decision is based, the purpose of this requirement being to enable the appellate court to determine, by an inspection of the record, whether a contempt has in fact been committed and whether the court had jurisdiction to punish it."

In *Chula* v. *Superior Court*, 368 P.2d 107 (1962), the Supreme Court of California recently stated the rule in these terms:

"An order adjudging a person guilty of contempt in the immediate view and presence of the court must recite facts showing acts which constitute a contempt. . . . This is jurisdictional, and an order which assumes to punish summarily a direct contempt of court is void unless it shows on its face facts sufficient to constitute a legal contempt. . . . Such facts must be stated with sufficient particularity to show, without the aid of speculation, that a contempt actually occurred."

To the same effect: *Parmelee Transportation Company* v. *Keeshin*, 294 F.2d 310 (7th Cir. 1961); *State* v. *Treon*, 188 N.E.2d 308 (Ohio 1963); *Application of Balucan*, 353 P.2d 631 (Hawaii 1960); *People* v. *Mason*, 190 N.E.2d 494 (Ill. 1963); *Scott* v. *Davis*, 328 S.W.2d 392 (Mo. 1959); *Stern* v. *Chandler*, 134 F.2d 550 (Mo. 1957); *State* v. *Murray*, 102 N.E.2d 251 (Ind. 1952); *Waldman* v. *Churchill*, 186 N.E. 690 (N.Y. 1933).

230

In Dangel, *N.L.M. Contempt* (1939 ed.), it is said at p. 255:

"It befits every court, which has a proper regard for the rights of the citizens and a due respect to its own character, to state explicitly in its judgment the facts constituting the contempt. The findings of the court should be very clearly stated in the judgment."

■ Let us examine the warrant issued in the instant case in order to determine whether it complies with the requirements of law and the case law.

Although *People* v. *Báez*, 72 P.R.R. 167 (1951), and *De Torres* v. *District Court*, 58 P.R.R. 519 (1941), contain certain expressions of this Court to the effect that two separate documents are required—sentence and warrant—and that it is in the latter that the specific acts of contempt should be recited, we see no serious objection against reciting in a single document everything required by the statute. It would not be more beneficial for one adjudged in contempt if the court should first render a judgment setting forth only that he is adjudged guilty of contempt and impose a penalty and then recite in the warrant of arrest everything required by § 3 copied above. How is he prejudiced if the court renders judgment reciting all the details required by § 3 and imposing the penalty, including also the warrant of arrest, all signed by the trial judge? See *State* v. *Treon*, *supra* at p. 314.

The contention that a separate sentence should be pronounced in each contempt case, reciting only the incident involved therein, is based on a strict adherence to the form. Formulism, as a general rule, is rational only when it helps to safeguard fundamental rights. That is why we require strict adherence to the requisite of stating clearly the act constituting contempt. However, the appearance of such recital in two separate documents instead of one does not

help any in safeguarding the rights of persons guilty of contempt.

Analyzing the judgment rendered, we find that it contains the legal requirements as to two contempts. Let us see as to the first. An incident occurred, and in connection with a comment by the judge the attorney "answered with disrespectful motions and gestures. . . . The court called the attorney's attention to his conduct and ended the incident. The attorney continued acting disrespectfully, and when the undersigned judge ordered the marshal to take the attorney out of the room, he said: 'You do that because you are up there.' The attorney had already been warned that if he continued acting in such unlawful way he would be punished for contempt. For that reason, and upon hearing what we have quoted, we sentenced the attorney to pay a $25 fine." Here ended the first incident, and the document discloses clearly the disrespectful conduct constituting contempt.

In addition to the foregoing, the document reads: "The attorney continued acting disrespectfully, aloud, in a hostile attitude toward the court. He would not keep quiet despite the order to keep quiet. He did not withdraw despite the marshal's and Judge Flores' efforts. He insisted on his conduct despite the fact that the court kept counting the fines for contempt imposed. On several occasions the attorney in question said to the court: 'Keep on punishing for contempt.' On another occasion, in the incident to which we are referring, the attorney called the undersigned judge a bully. On another he said that they would have to kill him." So far there is unquestionably another contempt. The judge himself denominates it an incident.

It could be held that the commission of more than one contempt appears from the last part copied: one, when the attorney insisted on the same conduct after he was sentenced for the first contempt; another, when he called the

judge a bully; and still another, when he said that they would have to kill him. However, from the manner in which the document is worded it does not appear clearly whether the latter two statements formed part of the incident arising after the judge sentenced him for the first contempt, since the judge says "on another occasion, in the incident to which we are referring, the attorney called the undersigned judge a bully," and "on another he said that they would have to kill him." Apparently this was part of the incident occurring immediately after the first sentence. A judgment of direct contempt, which we must bear in mind is a summary proceeding in which the alleged condemner has no opportunity to account for his conduct, since the judge may impose the sentence as soon as in his judgment an act constituting contempt has been committed, must be accurate and clear. "Such facts must be stated with sufficient particularity to show, without the aid of speculation, that a contempt occurred." *Chula* v. *Superior Court, supra.* There should be no occasion for guesswork or interpretations. Every incident constituting contempt must be set forth clearly. "The required order, constituting both the findings of fact and the judgment, must recite sufficient facts, with sufficient particularity to show that the contempt has been committed. [Citations.] In contempt there is no presumption in favor of the regularity of the proceedings insofar as jurisdictional defects are concerned. [Citations.] If jurisdiction is not affirmatively shown, an appellate court cannot indulge a presumption in its favor." *Kroneberger* v. *Superior Court,* 16 Cal. Rptr. 339, 341 (Cal. 1961).

■ However, after the two incidents recited in the judgment as required by law, the judge states thus: "The disobedience of the orders, disrespectful conduct, phrases mentioned above, totalled nine different transactions which gave rise to the nine sentences of $25 fines imposed on defendant."

The seven sentences additional to the two mentioned above do not comply with the statutory provisions. The court, therefore, exceeded its jurisdiction in imposing nine sentences instead of two.

■ The conduct of attorney Cayetano Coll Pujols is most censurable, particularly considering that because of the essence of his position the judge, in view of the series of invectives addressed to him, could not descend to the plane to which the attorney sought to lead him. Only because of the fact that the judge failed to recite specifically and in detail in what consisted each contempt, as we have seen is expressly required by law, we believe that seven of the nine sentences were imposed without jurisdiction. An attorney is always under the duty to show respect and consideration to the courts. He must never forget that he is an officer and that it is his duty to preserve immaculate the image of justice. If attorneys show no respect toward the judge, what is then to be expected of other persons who appear before him? What concept of respect and consideration toward the court would those citizens have who were present at the time of the occurrence of the incident which gave occasion for the judgments for contempt? This is why the First Canon of Professional Ethics Governing the Conduct of Lawyers of Puerto Rico provides that "It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance."

■ Since two of the sentences pronounced by the district judge are valid and have not been served as yet, habeas corpus does not lie. The question that the judge sentenced defendant to serve 25 days in jail in each case if the fine imposed was not satisfied, where the law provides that in default thereof "the person adjudged guilty of such contempt

may be imprisoned in the local jail nearest to such court for not more than the period of twenty (20) days," cannot be raised either until the valid part of the two sentences has been served. *Méndez* v. *Warden*, 83 P.R.R. 178 (1961); *Ex parte Texidor*, 8 P.R.R. 508 (1905); *Ex parte Nazario*, 8 P.R.R. 473 (1905); *Ex parte Rivera*, 4 P.R.R. 188 (1903); *Ex parte Rodríguez*, 3 P.R.R. 552 (1903). See, also, *Díaz* v. *Campos*, 81 P.R.R. 975 (1960), and *Vázquez* v. *Rivera*, 70 P.R.R. 203 (1949).

For the reasons stated above, the judgment rendered by the Superior Court will be reversed and another rendered instead denying the habeas corpus.